Todd M. Schneider (SBN 158253)
Jason H. Kim (SBN 220279)
James A. Bloom (SBN 31105)
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
TSchneider@schneiderwallace.com
JKim@schneiderwallace.com
JBloom@schneiderwallace.com

*Attorneys for Plaintiffs Connor Dalton and*
*Anthony Samano and the Proposed Class*

## UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONNOR DALTON and ANTHONY SAMANO, as participants in and on behalf of the O.C. Communications Employee Partnership Program Plan and Trust, and on behalf of a class of all others who are similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>FORREST C. FREEMAN (aka CRAIG FREEMAN); ALERUS FINANCIAL, N.A.; CARLA FREEMAN; LARRY L. WRAY; REGINAL D. WRIGHT; RICK WYLIE; DON YEE; JOHN DOES 1-50; O.C. COMMUNICATIONS, INC.; and TAK COMMUNICATIONS CA, INC,<br><br>                    Defendants. | Case No. _____<br><br><br>**CLASS ACTION COMPLAINT** |

## INTRODUCTION

1.      Plaintiffs Connor Dalton and Anthony Samano, participants in the O.C. Communications Employee Partnership Program Plan and Trust, which is an employee stock ownership plan ("ESOP") under Internal Revenue Code § 4975(e)(7) and section 407(d)(6) of the Employee Retirement Income Security Act of 1974 ("ERISA"), bring this action in their representative capacity on behalf of the ESOP and as a class action on behalf of all other similarly situated participants in and beneficiaries of the ESOP (collectively, the "Plaintiffs"). Plaintiffs bring this action under ERISA §§ 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3), against Defendants Forrest Freeman, Carla Freeman, Larry Wray, Reginal D. Wright, Rick Wylie, Don Yee[1] and John Does 1-50 who were the fiduciaries of the ESOP.  Defendant Alerus Financial, N.A. ("Alerus" or the "Trustee") was the ESOP's trustee during the relevant period. O.C. Communications, Inc. ("OCC") was the sponsor of the ESOP and the ESOP's Plan administrator. TAK Communications CA, Inc. ("TAK CA") is the successor in interest of OCC (collectively the Defendants").

2.      OCC was established in or around 1987 and at all relevant times was headquartered in Elk Grove, California.  OCC was a fulfillment provider for cable and phone companies in the United States. OCC grew to a national brand with 30 offices in 12 states.  The company footprint stretched from South Florida to Washington State.  By 2018, OCC had grown to more than 1,500 employees and 3,000 contract technicians.

3.      On September 30, 2011, OCC established the ESOP to help its employees save for retirement and enjoy an ownership interest in OCC.

4.      An employee stock ownership plan, like the ESOP, is a type of trust covered by ERISA. ESOPs are designed to hold and safeguard the retirement savings of the company's employee participants and give the participants an ownership stake in their employer.

5.      Plaintiffs are former OCC employees and participants in the ESOP.

---

[1] Upon information and belief, Defendant Craig Freeman also uses the name and is known by Forrest C. Freemen and/or Forrest Freeman.  Any reference to Craig Freeman is this Complaint shall also mean Forrest C.  Freeman and Forrest Freeman. Similarly, any reference to Forrest C. Freemen or Forrest Freeman shall also mean Craig Freeman.

1

2

3

4

5

6

6.      In December of 2011, the ESOP purchased 3,333,333 shares of OCC common stock for $11.5 million, or $3.45 per share. The shares were purchased with proceeds of loans from Defendant Forrest Freeman and his spouse, Carla J. Freeman, as trustees of the C&C Freeman Trust. Over time, OCC made contributions to the ESOP which made payments on the loans, and shares were allocated participant accounts reflecting their service to OCC according to the terms of the ESOP's plan document.

7

8

7.      As of December 31, 2018, the ESOP participants were informed that their ESOP shares were worth $2.21 per share.

9

10

11

8.      On or about May 17, 2019, OCC entered into an asset purchase agreement with TAK Communications CA, Inc. ("TAK CA"), whereby OCC sold substantially all operating assets and liabilities to TAK CA for a purchase price of $7.2 million.

12

13

14

9.      Business continued as usual after the asset sale. TAK CA has many of the same officers as OCC, conducts business from the same premises, and uses the same employees and equipment.

15

16

17

10.      On or about December 31, 2020, OCC redeemed the ESOP's outstanding, allocated 2,342,027 shares of OCC for just $750,000, or $0.32 per share, less than a tenth of the purchase price that the ESOP paid for those shares.

18

19

11.      At around the same time, Plaintiffs became unable to access information about their ESOP accounts through the website of the ESOP's third-party administrator, Principal Financial.

20

21

22

23

12.      OCC was a successful and growing business throughout the relevant period. OCC's asset sale to TAK CA was at a price below the fair market value of OCC or its assets. In addition, OCC's redemption of the ESOP's shares for $0.32 per share did not represent the fair market value of the ESOP's shares.

24

25

26

27

13.      No prudent or loyal fiduciary for the ESOP would have allowed those transactions to occur under those circumstances. All Defendants here were the ESOP's named fiduciaries under ERISA, and many were also corporate fiduciaries as officers or directors of OCC. These roles carried strict fiduciary duties to the ESOP to ensure that OCC's asset sale to TAK CA and the redemption of

28

the ESOP's shares occurred at a price not less than fair market value, and that the terms of the transactions were fair to the ESOP.

14.    Accordingly, Plaintiffs bring these claims for breach of fiduciary duty and for prohibited transactions against the ESOP's fiduciaries. In addition, Plaintiffs request that the Court order an accounting of the ESOP, to explain how the ESOP's assets could have been sold for so little, and why none of the proceeds have been distributed to the ESOP's participants. Finally, Plaintiffs seek relief for failing to provide requested information which the Defendants were required to provide under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4) within 30 days of Plaintiff's request.

### JURISDICTION

15.    Plaintiffs brings this action pursuant to ERISA §§ 502(a)(2), (a)(3), and (c)(1), 29 U.S.C. §§ 1132(a)(2), (a)(3), and (c)(1).

16.    This Court has subject matter jurisdiction over Plaintiff's claims pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331 because this action arises under the laws of the United States.

17.    This Court has general personal jurisdiction over Defendants Forrest Freeman, Carla Freeman, Larry Wray, Reginal D. Wright, Rick Wylie and Don Yee because each resides and/or is domiciled in this District, and has general personal jurisdiction over OCC and TAK CA because each is incorporated in this district and has their principal place of business in this district.

18.    The Court has specific personal jurisdiction over all Defendants because they took the actions described herein in this District and with respect to the ESOP which was administered in this district.

19.    Pursuant to 29 U.S.C. § 1132(e)(2) venue is proper in this District because the ESOP was administered in this District and the misconduct described herein occurred in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because, for the same reasons, a substantial part of the events or omissions giving rise to the claims occurred in this District.

### THE PARTIES AND THE ESOP

20.    The ESOP is an employee benefit plan and employee pension plan covered by ERISA within the meaning of ERISA § 3(2)(A) & (7), 29 U.S.C. § 1002(2)(A) & (7). The ESOP and its

related trust are a stock bonus under Internal Revenue Code § 401(a), and an employee stock ownership plan within the meaning of Internal Revenue Code § 4975(e)(7) and ERISA § 407(d)(6), 29 U.S.C § 1107(d)(6).

21.     At all relevant times, the sponsor of the ESOP was OCC, which was headquartered and domiciled in Elk Grove, CA.

22.     At all relevant times, OCC's ESOP has been administered by OCC in this district.

23.     At all relevant times, Plaintiff Dalton has been a participant in the ESOP. Plaintiff Dalton is a citizen and resident of California.

24.     At all relevant times, Plaintiff Samano has been a participant in the ESOP. Plaintiff Samano is a citizen and resident of California.

25.     Defendant Forrest Freeman was the President of OCC from 1987 until at least 2018. Defendant Forrest Freeman, on information and belief, is or was a member of the Board of Directors of OCC.

26.     Defendant Forrest Freeman signed the ESOP's Form 5500 Annual Reports on behalf of OCC as the ESOP's plan administrator.

27.     Defendants Forrest Freeman, Carla Freeman, and Larry Wray were the members of the ESOP Committee. As members of the ESOP Committee, each of these Defendants was a named fiduciary for the ESOP.

28.     Defendants Reginal D. Wright, Rick Wylie and Don Yee were members of OCC's Board of Directors during the relevant time period. As members of OCC's Board of Directors, each of these Defendants was a named fiduciary for the ESOP.

29.     John Doe Defendants 1-50 are other individuals who served on OCC's Board of Directors and/or the ESOP Committee between 2018 and 2021.  As such, each John Doe 1-50 are a named fiduciaries of the ESOP.

30.     Defendant Alerus was the ESOP's trustee at all relevant times. Defendant Alerus is a federally chartered national association with its headquartered in Grand Forks, North Dakota. Defendant Alerus is a wholly owned subsidiary of Alerus Financial Corporation (ticker: ALRS), a

publicly traded Delaware corporation with its principal place of business in Grand Forks, North Dakota.

31.    Defendant OCC is a corporation with its principal place of business in California and the sponsor of the ESOP.

32.    Defendant TAK CA is a corporation with its principal place of business in California, and is the successor in interest to OCC.

**FACTUAL ALLEGATIONS**

33.    OCC was founded as a Nevada corporation in or around 1987, called O.C. Communications, Inc.

34.    On October 13, 2011, an entity called O.C. Communications Parent, Inc. was incorporated in California.

35.    On October 13, 2011, O.C. Communications Parent, merged with OCC, the Nevada entity, and changed its named to OCC. Defendants Forrest Freeman and Carla Freeman signed the agreement of merger on behalf of both entities.

36.    At the time of the merger, OCC had 10 million outstanding shares entitled to vote on the merger.

37.    OCC established the ESOP effective September 30, 2011.

38.    At the time the ESOP was established, the ESOP Committee included Defendants Forrest Freeman, Carla Freeman, and Larry Wray.

39.    Defendants Forrest Freeman, Carla Freeman, and Larry Wray remained the members of the ESOP Committee until the termination of the ESOP.

40.    At the time the ESOP was established, Defendant Alerus was the ESOP's Trustee.

41.    At the time it was established, Principal Financial Group ("PFG") was the Plan's third-party administrator.

42.    In December of 2011, the ESOP entered into a $3.5 million term loan agreement (the "First Promissory Note") with Defendants Forrest Freeman and Carla Freeman, in their capacity as trustees of the C&C Freeman Trust.

43.    The First Promissory Note bore interest at a rate of 8.5% per annum.

44.     Also in December of 2011, the ESOP entered into an $8 million term loan agreement (the "Second Promissory Note") with Defendants Forrest Freeman and Carla Freeman, in their capacity as trustees of the C&C Freeman Trust.

45.     The Second Promissory Note bore interest at a rate of 1.27% per annum.

46.     The ESOP used the proceeds of the First Promissory Note and the Second Promissory Note were to purchase 3,333,333 shares OCC common stock for $3.45 per share.

47.     According to the ESOP's Form 5500 Annual Report, the value of the shares as purchased by the ESOP in 2011 was determined by an "independent appraiser."

48.     The ESOP held the stock in trust, and as the ESOP made payments on the notes, stock was allocated to the accounts of ESOP participants, including Plaintiffs.

49.     The unallocated shares of stock owned by the ESOP in trust were collateral for the unpaid balance on the First Promissory Note and the Second Promissory Note.

50.     Each year, the OCC could make a discretionary contribution to the ESOP and/or was required to make a nondiscretionary matching contribution. Such contributions had to be at least the minimum amount necessary for the ESOP to discharge its obligations on the First and Second Promissory Notes.

51.     Such contributions were intended to be qualified contributions by OCC, which would be OCC could deduct from its income tax.

52.     A participant was required to complete at least 1,000 hours of service each year and be employed on the last day of the plan year to receive an allocation to their ESOP account.

53.     Defendant Alerus became trustee of the ESOP effective December 30, 2011.

54.     On March 9, 2012, the holder of the Second Promissory Note, the C&C Freeman Trust, assigned all of its rights pursuant to the note agreement OCC in exchange for a payment of $8 million.

55.     As of July 18, 2016, OCC identified Defendant Forrest Freeman as the President and CEO and Defendant Larry Wray as the COO.

56.     After the initial purchase price of Between 2012 and 2018, the appraised value of the ESOP's shares was:

| Date | Appraised value per share (or *transaction price*) |
|------|------|
| *9/30/2011* | *$3.45* |
| 12/31/2011 | $2.46 |
| 12/31/2012 | $1.58 |
| 12/31/2013 | $1.10 |
| 12/31/2014 | $1.96 |
| 12/31/2015 | $2.13 |
| 12/31/2016 | $2.94 |
| 12/31/2017 | $1.38 |
| 12/31/2018 | $2.21 |

## The Sale of OCC's Assets to TAK and the Liquidation of the ESOP

57.    On August 18, 2017, One For You Inc. was incorporated in California.

58.    On December 18, 2018, One For Your Inc. filed Restated Articles of Incorporation with the California Secretary of State, noting that the name of the corporation had been changed to TAK Communications CA, Inc.

59.    As of December 31, 2018, the ESOP owned and had allocated 2,342,027 shares of OCC, with an appraised value of $5.18 million. The ESOP also owned 991,306 unallocated shares, with an appraised value of $2.19 million.

60.    The roughly $8 million appraised value of the ESOP's interests included a discount for lack of marketability of the ESOP's shares.

61.    The ESOP appraisal was based upon "This appraisal is based upon a combination of the market and income valuation techniques" consistent with ESOP appraisals in prior years.

62.    The ESOP appraiser "took into account historical and projected cash flow and net income, return on assets, return on equity, market comparables and estimated fair value of Company assets and liabilities."

63.    The ESOP's shares represented roughly one-third of the total outstanding shares of OCC at year end 2018.

64.    Thus the appraised value of the ESOP's interest (roughly $8 million) suggested that OCC's value at year end 2018 was more than $24 million.

65.    Effective May 17, 2019, OCC entered into an asset purchase agreement with TAK Communications CA, Inc., whereby OCC sold, and TAK purchased, substantially all operating assets and liabilities of OCC for a purchase price of $7.2 million plus or minus certain excluded items as defined in the Asset Purchase Agreement.

66.    The $7.2 million sale price TAK paid for OCC's assets was far below the year end 2018 valuation for the ESOP's shares, which suggested OCC's value was more than $24 million.

67.    No major business disruptions hit OCC between yearend 2018 and May of 2019, when OCC's assets were sold to TAK.

68.    The $7.2 million price suggests OCC's assets were sold for $0.72 per share.

69.    Between 2012 and 2018, the ESOP made principal payments on the First and Second Promissory notes of $6.9 million.

70.    On December 2, 2020, Alerus agreed to serve as Trustee with respect to the termination of the ESOP and the redemption of the ESOP's OCC stock.

71.    The ESOP transferred its unallocated shares of OCC from the First Promissory Note to the C&C Freeman Trust and its unallocated shares of OCC from the Second Promissory Note to OCC, in exchange for satisfaction of the two promissory notes.

72.    On December 31, 2020, OCC redeemed the ESOP's 2,342,027 allocated shares for $750,000, or just $0.32 per share.

73.    Defendant Forrest Freeman subsequently founded a company called "MarketStorm," for which he served as Chief FinaExecutive Officer.

74.    Defendant Forrest Freeman's biography at MarketStorm's website stated that: "Craig founded and grew O.C. Communications to a national brand with 30 offices in 12 states. The company footprint was 3,000 miles, from South Florida to Washington State. O.C. Communications grew to 1,500 employees and 3,000 contract technicians. Craig has founded more than 10 companies."

75.    The sale of OCC's assets to TAK significantly undervalued OCC's assets. OCC was a thriving company with offices across the United States and throughout California, with equipment, contracts and revenues worth far in excess of $7.2 million.

76.     Instead of attempting to obtain the best price for OCC's assets, Defendants enriched themselves at the expense of OCC's common shareholders, including especially the ESOP.

77.     Many of OCC's officers and senior management maintained their roles with TAK CA, including Defendant Larry Wray, as well as Rudy Biscaino, Marc LaFleur, and Chris Keletson.

78.     Despite the transfer of assets from OCC to TAK, business continued essentially undisturbed. OCC (now TAK) continued to grow, and had a nationwide footprint with thousands of employees and independent contractors.

79.     Plaintiffs and rank-and-file employees of OCC were not informed about the reasons for the asset transfer, and were not told about the impact it would have on their ESOP shares.

80.     One day, the arrived at work and the name of the business had changed.

81.     But the same employees continued to do the same work with the same equipment.

**<u>The Northgate Property</u>**

82.     During part of the relevant period, OCC used, and TAK now uses, the large commercial building located at 4125-4128 Northgate Blvd, in Sacramento (the "Northgate Property").

83.     The address of the Northgate Property is sometimes given as 4128 N. Freeway Blvd., Sacramento.

84.     The building on the Northgate Property was constructed in 1983, is listed at 38,262 sq ft., and was appraised by the Sacramento County Assessor on September 20, 2021 as worth $3.27 million.

85.     Forrest & Freeman Exchange, LLC was a California LLC formed by Defendant Forrest Freeman on November 13, 2013.

86.     Forrest & Freeman Exchange, LLC listed its address as 2204 Kausen Dr., Suite 100, Elk Grove, CA, which was also OCC's address.

87.     On April 19, 2017, Forrest & Freeman Exchange, LLC filed an information statement with the California Secretary of State identifying C&C Freeman Trust as the only member or manager of the LLC.

88.     On April 26, 2017, Forrest & Freeman Exchange, LLC entered into a Lease Agreement leasing the Northgate Property to OCC.

89.     On May 8, 2017, a Forrest & Freeman Exchange, LLC entered into a Lease Subordination Agreement with Wells Fargo Bank, N.A., establishing that Wells Fargo's security interest on the Northgate Property was superior in priority to the April 26, 2017 lease.

90.     The Lease Subordination Agreement was signed by Defendants Forrest Freeman and Carla Freeman on behalf of the C&C Freeman Trust, and by Defendant Forrest Freeman on behalf of OCC.

91.     The Northgate Property was purchased by Forrest & Freeman Exchange, LLC on or about May 9, 2017 for $2.90 million.

92.     On July 6, 2018, the Northgate Property was transferred from Forrest & Freeman Exchange, LLC to Freeman Investments, LLC.

93.     Freeman Investments, LLC was also a California LLC formed by Defendant Forrest Freeman. In 2015, the address of Freeman Investments, LLC was also 2204 Kausen Drive, Suite 100, in Elk Grove.

94.     On July 5, 2018, Freeman Investments, LLC took out a $2.1 million loan from Umpqua Bank, secured by the Northgate Property.

95.     On January 31, 2020, Freeman Investments, LLC sold the Northgate Property to JJD Properties, LTD for $3.24 million.

96.     Forrest & Freeman Exchange, LLC, and subsequently Freeman Investments, LLC, leased the Northgate Property to OCC, and then TAK.

97.     OCC could have purchased the Northgate Property itself, instead of leasing the property from Defendant Freeman.

98.     OCC obtained no benefit from the lease agreement

99.     By purchasing the Northgate Property through his personal LLC, Forrest & Freeman Exchange, LLC, and leasing the Northgate Property to OCC, Defendant Forrest Freeman converted OCC's corporate opportunity for his own personal benefit, to the detriment of OCC and OCC's shareholders, including the ESOP.

**Plaintiffs' Attempts to Get Information About their ESOP Accounts**

100.    In 2020 or 2021, Plaintiffs stopped receiving information from the ESOP about their accounts.

101.    Plaintiffs repeatedly contacted the ESOP's third-party administrator, Principal, to obtain information about the status of the ESOP.

102.    Principal's representatives informed Plaintiffs that they did not know what was happening with the ESOP either.

103.    In November of 2021, Plaintiff Dalton, through undersigned counsel, sent a letter to the ESOP's plan administrator, requesting documents relating to the ESOP and the sale of assets to TAK pursuant to ERISA § 104(b)(4), *codified at* 29 U.S.C. § 1024(b)(4),.

104.    Plaintiff received a domestic return receipt from the Unites States Postal Service, reflecting that Plaintiff's ERISA § 104(b)(4) letter was delivered on November 3, 2021.

105.    Specifically, Plaintiff requested:

- The Plan document;
- The Summary Plan Description and all summaries of material modification thereto;
- All written delegations of fiduciary or investment authority regarding the Plan's assets;
- Any trust agreement;
- All documents related to the May 17, 2019 asset purchase between O.C. Communications, Inc. and TAK Communications CA, Inc. (the "Asset Purchase");
- All documents related to the December 31, 2020 redemption of allocated shares (the "Share Redemption"); and
- Documents sufficient to identify all fiduciaries and administrators of the Plan with any responsibility for reviewing or approving the Asset Purchase or the Share Redemption.

106.    On November 30, 2021, Plaintiff received a response letter from counsel for OCC including a copy of the ESOP Plan document, dated December 30, 2011, the ESOP's Summary Plan Description, an amendment to the ESOP Plan dated March 1, 2017, and an amendment to the ESOP Plan dated September 17, 2021.

107.    OCC's letter to Plaintiff indicated that a further response to Plaintiff's document requests would be provided by Monday, December 6, 2021.

108.    OCC's counsel replied again by letter on January 20, 2022. That letter contained copies of documents purporting to be the ESOP's Second Restated Plan document, a document

entitled Alerus Service Agreement – Discretionary Trustee, and an engagement letter with Alerus dated December 20, 2020.

109.    OCC's January 20, 2022 letter stated that OCC did not believe the remainder of Plaintiff's requests fell within the requirements of ERISA § 104(b)(4).

110.    On or about February 14, 2022, Plaintiff Dalton received a letter from Principal, the ESOP's third-party administrator, dated February 9, 2022.

111.    The letter identified several options Plaintiff Dalton had for rolling his ESOP balance over into another account, including an IRA or other qualified retirement plan.

112.    The February 9, 2022 letter also included two ESOP account statements for Plaintiff Dalton, one dated December 31, 2020.

113.    The December 31, 2020 statement for Plaintiff Dalton reflected a balance of $362.24 cents, all of what was attributable to cash or "income earned on cash." The statement showed that Plaintiff Dalton had 707.0679 shares of OCC in his account, which had all be "Sold/Repurchased."

114.    The December 31, 2020 statement shows that the "Current Market Value Per Share" of Plaintiff Dalton's shares was $0.06.

115.    In April of 2022, Plaintiff Dalton received a distribution check from Principal for $252.44, dated March 31, 2022.

## DEFENDANTS' FIDUCIARY STATUS UNDER ERISA

116.    ERISA requires that every plan identify "one or more named fiduciaries" with general responsibility for administering the plan. ERISA § 402(a)(1).

117.    According to the ESOP's plan document the Board, the ESOP Committee and the Trustee were all "named fiduciaries under ERISA."

118.    The Board was vested with "authority to amend and terminate the Plan, to appoint and remove members of the Committee and to appoint and remove the Trustee."

119.    The Committee, in addition to certain specifically identified fiduciary functions, was given "the power and duty to do all things necessary or convenient to effect the intent and purpose of the Plan…."

120.    Under the terms of the ESOP, the Trustee was subject to "carrying out the directions of the Committee."

121.    Defendants Forrest Freeman, Carla Freeman, Larry Wray (the "Committee Defendants"), and Defendants Reginal D. Wright, Rick Wylie, Don Yee (the "Board Defendants"), and John Doe Defendants 1-50, who were the other members of the Board and the ESOP Committee, were all therefore express fiduciaries of the ESOP under ERISA § 402(a)(1) during all or part of the relevant period.

122.    ERISA also defines fiduciary status so that anyone is a fiduciary "to the extent" they *in fact* perform a fiduciary function. *See* ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Thus in addition to expressly designated fiduciaries, anyone is a fiduciary "to the extent" he "exercises any discretionary authority or discretionary control respecting management of such plan" or "exercises any authority or control respecting management or disposition of its assets" or "has any discretionary authority or discretionary responsibility in the administration of such plan." *Id.*

123.    "Fiduciary status under ERISA is to be construed liberally, consistent with ERISA's policies and objectives." *Ariz. State Carpenters Pension Tr. Fund v. Citibank*, 125 F.3d 715, 720 (9th Cir. 1997); *see also Baker v. Kingsley*, 387 F.3d 649, 663–64 (7th Cir. 2004) (courts apply a "consistently broad reading" to the functional definition of fiduciary under ERISA).

124.    In particular, appointing another ERISA fiduciary is itself a fiduciary function, and carries with it fiduciary duties to prudently and loyalty appoint, monitor the performance of, and, if necessary, remove an appointee. *Johnson v. Couturier*, 572 F.3d 1067, 1076-77 (9th Cir. 2009) (those who act as "the de facto decision makers of closely held and related entities" also serve as "ERISA fiduciaries with respect to appointment and removal of ESOP trustees").

125.    "Implicit within the duty to select and retain fiduciaries is a duty to monitor their performance." *Solis v. Webb*, 931 F. Supp. 2d 936, 953 (N.D. Cal. 2012). Thus "[a] proper understanding of the duty to monitor recognizes that a fiduciary may not enable and participate in a trustee's breach of ERISA duties… [a] fiduciary with a duty to monitor a trustee is liable for the trustee's fiduciary breach if he 'knew or should have known' about the trustee's misconduct and failed to take steps to remedy the situation." *Acosta v. Saakvitne*, 355 F. Supp. 3d 908, 923 (D. Haw. 2019)

126.     The Board Defendants are thus also ERISA fiduciaries by virtue of their power to appoint members of the ESOP Committee and the Trustee. They are also ERISA fiduciaries by virtue of their control over OCC itself, in which the ESOP held an interest.

127.     Defendant Alerus accepted appointment as the ESOP's Trustee in December of 2011.

128.     In a document entitled "Independent Trustee Engagement Agreement," dated December 2, 2020, Alerus agreed to accept responsibility for determining whether the ESOP should be terminated and whether the ESOP's stock should be redeemed by OCC, and considering "such other transactions and/or stock dispositions which, separately or in combination may result in the ESOP disposing of 100% of its common stock ownership interest in the Company."

129.     As Trustee, Alerus was also a named fiduciary of the ESOP under ERISA.

130.     Alerus, the Board Defendants and the Committee Defendants were therefore all express and/or de fact fiduciaries under ERISA with respect to the ESOP at all relevant times, and are referred to herein as the "Fiduciary Defendants."

## ERISA'S FIDUCIARY DUTIES

131.     ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), provides, in pertinent part, that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries, for the exclusive purpose of providing benefits to participants and their beneficiaries, and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

132.     These fiduciary duties under ERISA §§ 404(a)(1)(A) and (B) are referred to as the duties of loyalty, exclusive purpose and prudence.

133.     ERISA's fiduciary duties are the "highest known to the law." *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

134.     ERISA's "prudence standard is 'not that of a prudent lay person, but rather that of a prudent fiduciary with experience dealing with a similar enterprise." *Tibble v. Edison Int'l*, 2017 U.S. Dist. LEXIS 130806, at *33-34 (C.D. Cal. Aug. 16, 2017) (quoting *Whitfield v. Cohen*, 682 F. Supp. 188, 194 (S.D.N.Y. 1988)).

135.    ERISA's "duty of loyalty requires fiduciaries to make decisions 'with an eye single' toward beneficiaries' interests." *Lorenz v. Safeway, Inc.*, 2019 U.S. Dist. LEXIS 65727, at *11 (N.D. Cal. Apr. 10, 2019) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 235 (2000)).

136.    The Ninth Circuit explained that

> A fiduciary who engages in a self-dealing transaction pursuant to 29 U.S.C. § 1108(e) has the burden of proving that he fulfilled his duties of care and loyalty and that the ESOP received adequate consideration. This burden is a heavy one. When it is 'possible to question the fiduciaries' loyalty, they are obliged at a minimum to engage in an intensive and scrupulous independent investigation of their options to insure that they act in the best interests of the plan beneficiaries.'

*Howard*, 100 F.3d at 1488-89.

137.    ERISA's fiduciary duties entail, among other things:

(a) The duty to conduct an independent and thorough investigation into, and to continually monitor the merits of all the investment alternatives of a plan;

(b) The duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor; and

(c) The duty to disclose and inform, which encompasses: (1) a negative duty not to misinform; (2) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (3) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries.

138.    According to Department of Labor ("DOL") regulations and case law interpreting these statutory provisions, in order to comply with the prudence requirement under ERISA §404(a), a fiduciary must show that: (a) he has given appropriate consideration to those facts and circumstances that, given the scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to the particular investment or investment course of action involved, including the role the investment or investment course of action plays in that portion of the plan's investment portfolio with respect to which the fiduciary has investment duties; and (b) he has acted accordingly.

139.    Again, according to DOL regulations, "appropriate consideration" in this context includes, but is not necessarily limited to:

o  A determination by the fiduciary that the particular investment or investment course of action is reasonably designed, as part of the portfolio (or, where applicable, that

> portion of the plan portfolio with respect to which the fiduciary has investment duties), to further the purposes of the plan, taking into consideration the risk of loss and the opportunity for gain (or other return) associated with the investment or investment course of action; and
>
> o   Consideration of the following factors as they relate to such portion of the portfolio:
>
>    ▪  The composition of the portfolio with regard to diversification;
>    ▪  The liquidity and current return of the portfolio relative to the anticipated cash flow requirements of the plan; and
>    ▪  The projected return of the portfolio relative to the funding objectives of the plan.

140.    A fiduciary that undertakes to sell plan assets is bound by the duties of prudence and loyalty when they do so. A prudent and loyal fiduciary with experience selling large private companies would make sure that they identified and solicited offers from all types of potential buyers, including competitors.

141.    ERISA § 405 renders Plan fiduciaries liable for the breaches of other fiduciaries under certain circumstances, such as when a fiduciary knowingly participates in or conceals the breach of another fiduciary, if the fiduciary's own breach enables the breach by the other fiduciary, or if the fiduciary is aware of the other fiduciary's breach yet makes no reasonable effort to correct the breach.

142.    ERISA § 406 prohibits Plan fiduciaries from entering into transactions between the plan and a party in interest or from entering into various transactions involving the plan and a fiduciary that directly involve, or raise a heightened risk of, self-dealing by the plan's fiduciary.

143.    ERISA § 206(d)(4) provides that courts may order an offset of all or part of a participant's benefits against the amount the participant is ordered or required to pay to the plan, if, among other things, the participant breached his ERISA fiduciary duties.

## CLASS ACTION ALLEGATIONS

144.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes any participant or beneficiary of a retirement plan to bring an action individually on behalf of that plan to enforce a breaching fiduciary's liability to the plan under 29 U.S.C. § 1109(a). Such claims are brought "in a

representative capacity on behalf of the plan…" *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985).

145.    The claims set forth in this action meet the requirements of Rule 23, and class certification would be appropriate with respect to the following class (the "Class"):

146.    All participants in and beneficiaries of the OCC Corporation Employee Stock Ownership Plan at the time the ESOP was terminated.

147.    The Class includes at least 965 participants in the ESOP as of December 31, 2019, and is therefore so numerous that joinder of all class members would be impracticable.

148.    There are numerous questions of law and fact common to the Class because the claims asserted herein arise out of a singular course of common conduct by Defendants that affected all class members through their participation in the ESOP in precisely the same way, in violation of precisely the same legal duties. The common questions of law and fact include whether the assets of OCC were sold to TAK CA for less than fair market value or in a manner otherwise fair to the ESOP, whether OCC's redemption of the ESOP's shares occurred at the fair market value of those shares or in a manner otherwise fair to the ESOP, and whether the ESOP has been properly administered and participants' retirement savings appropriately handled and distributed.

149.    Alternatively, this action should be certified as a class under Rule 23(b)(3) if it is not certified under Rule 23(b)(1)(A) or (B). A class action is the superior method for the fair and efficient adjudication of this controversy because common questions of law and fact predominate over questions affecting only individual class members, and because, in light of the representative nature of the claims at issue, a class action would be superior to other available methods for fairly and efficiently adjudicating the controversy.

150.    Plaintiffs Dalton and Samano will fairly and adequately represent the interests of the Class under Rule 23(a)(4), and undersigned counsel are best able to represent the interests of the Class under Rule 23(g).

...

...

## CLAIMS FOR RELIEF

## COUNT I

### Breach of Fiduciary Duty
### ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1)

### The Fiduciary Defendants

151.    Plaintiff repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

152.    ERISA § 404, 29 U.S.C. §1104, requires ERISA fiduciaries to perform their fiduciary duties and responsibilities prudently, as would an experienced ERISA fiduciary, and loyally, exclusively in the interest of the plan and its participants for the purpose of providing benefits.

153.    As fiduciaries for the ESOP, the Fiduciary Defendants failed to prudently and loyally fulfill their fiduciary duties to the ESOP when they approved the sale of OCC's assets to TAK under the Asset Purchase Agreement because the proceeds were less than the fair market value of OCC's assets. As fiduciaries of the ESOP, the Fiduciary Defendants knew or should have known that the sale of OCC's assets to TAK was not fair to the ESOP from a financial point of view, and had ERISA fiduciary duties to act in the ESOP's interest and to protect the ESOP's interest, including the sale of OCC's assets.

154.    Moreover, as corporate officers and directors of OCC, the Board Defendants and the Committee Defendants had corporate fiduciary duties to the ESOP as a minority shareholder that they should have, but did not, act to protect. A fiduciary has an obligation to take action to prevent and unfair diminution of trust assets (here, the value of the ESOP's shares of OCC), including bringing legal claims to enforce a chose in action owned by the trust.

155.    At a minimum, the Fiduciary Defendants could have, and should have, filed an action in Court to seek clarification about their responsibilities to the ESOP under ERISA and to the ESOP as a minority shareholder of OCC. But they did not do so.

156.    These actions, and failures to act, violated the duties of prudence and loyalty contained in ERISA § 404(a).

157.    Under ERISA § 409(a), 29 U.S.C. § 1109(a), a fiduciary that violates any of ERISA's duties, including ERISA § 404(a), must "make good" to the plan the losses to the plan resulting from its violations, and is "subject to such other equitable or remedial relief as the court may deem appropriate."

158.    Thus, under ERISA §§ 502(a)(2) and 409(a), 29 U.S.C. §§ 1132(a)(2) and 1109(a), Defendant Forrest Freeman and Defendants John Doe 1-50 are liable, in an amount to be determined at trial, for the losses to the Plan caused by their violations of ERISA § 404(a) and are "subject to such other equitable or remedial relief" as the Court "may deem appropriate."

159.    Under ERISA § 502(a)(3), Defendant Alerus, the Board of Directors Defendants, and the OCC Fiduciary Defendants are also subject to appropriate equitable relief including, but not limited to, constructive trust and equitable surcharge.

## COUNT II

### Breach of Co-Fiduciary Duty
### ERISA 405(a)(1)-(3), 29 U.S.C §1105 (a)(1)-(3)

### The Fiduciary Defendants

160.    Plaintiff repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

161.    A fiduciary with respect to a plan is liable for the breach "of another fiduciary" for the same plan if "he participates knowingly in, or knowingly undertakes to conceal, an act or omissions of such other fiduciary, knowing such act or omission is a breach," ERISA § 405(a)(1), or if, "by his failure to comply with [his fiduciary duties] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach," ERISA § 405(a)(2), or if "he has knowledge of a breach by some other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." ERISA § 405(a)(3).

162.    Pursuant to § 405 of ERISA, 29 U.S.C. § 1105, the Fiduciary Defendants are also liable as co-fiduciaries with respect to the above-described violations because they participated knowingly in their co-fiduciaries' breaches; enabled other fiduciaries to violate ERISA by virtue of their own breaches of fiduciary duty; knowingly undertook to conceal those breaches; enabled their

co-fiduciaries to commit the breaches and failed to make any reasonable efforts to remedy the breaches.

163.    ERISA § 502(a)(2) permits plan participants, such as Plaintiff, to bring civil actions for "appropriate relief" under ERISA § 409.

164.    Under ERISA § 409(a), a fiduciary that violates any of ERISA's duties, including ERISA § 405(a)(1), (a)(2) and (a)(3), must "make good" to the Plans the losses to the Plans resulting from its violations of ERISA § 405(a)(1), (a)(2) and (a)(3), and is "subject to such other equitable or remedial relief as the court may deem appropriate."

165.    Thus the Fiduciary Defendants are liable, in an amount to be determined at trial, for the losses to the ESOP caused by their violations of ERISA § 405(a)(1), (a)(2) and (a)(3) and are "subject to such other equitable or remedial relief" as the Court "may deem appropriate."

166.    Under ERISA § 502(a)(3), the Fiduciary Defendants are liable, are also subject to appropriate equitable relief including, but not limited to, constructive trust and equitable surcharge.

**COUNT III**

**Failure to Provide Required Information Requested by Plan Participant in Writing
ERISA 405(a)(1)-(3), 29 U.S.C §1105 (a)(1)-(3)**

**Defendants Craig Freeman, OCC and TAK**

167.    Plaintiff repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

168.    ERISA § 104(b)(4), *codified at* 29 U.S.C. § 1024(b)(4), requires ERISA plan administrators, upon written request of any participant or beneficiary, to "furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."

169.    Here, either Defendant Forrest Freeman or OCC, or TAK as successor in interest to OCC, served as administrator of the ESOP during 2021 and 2022.

170.    Plaintiff Dalton sent a written request for records pursuant to ERISA § 104(b)(4) to OCC, which was delivered on or about November 3, 2021.

171.    Defendants provided certain of the requested documents on November 30, 2021. Defendants provided a second set of responsive documents on January 20, 2022.

172.    However, Defendants have not provided other of the requested documents. In particular, Defendants have not provided the following requested documents:

- All documents related to the May 17, 2019 asset purchase between O.C. Communications, Inc. and TAK Communications CA, Inc. (the "Asset Purchase");
- All documents related to the December 31, 2020 redemption of allocated shares (the "Share Redemption"); and
- Documents sufficient to identify all fiduciaries and administrators of the Plan with any responsibility for reviewing or approving the Asset Purchase or the Share Redemption.

173.    In particular, Defendants did not provide any information about the membership of the ESOP Committee during 2019 and 2020. Nor did Defendants provide any documents reflecting the role of the ESOP or its fiduciaries in the Share Redemption or the Asset Purchase, except for a document purporting to appoint Alerus as an independent trustee dated in December of 2020, and a termination amendment for the ESOP effective September 17, 2021.

174.    Each of those documents is a document under which the ESOP was established or operated, and thus must be produced under ERISA § 104(b)(4).

175.    ERISA § 502(c), 29 U.S.C. § 1132(c), provides that a plan administrator who fails to provide requested materials covered by ERISA § 104(b)(4) within 30 days "may in the court's discretion be personally liable to such participant in the amount of up to $100 a day from the date of such failure to removal, and the court may in its discretion order such other relief as it deems proper."

176.    The Court should order Defendants to pay $100 per day for each day from December 4, 2021 to the date of trial or the date until Defendants produce the requested documents.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.    Certify this action as a class action pursuant to Fed. R. Civ. P. 23(a).

B.    Declare that Defendants breached their fiduciary duties to the ESOP.

C.      Enjoin Defendants from further violations of their fiduciary responsibilities, obligations, and duties and from further engaging in transactions prohibited by ERISA.

D.      Order that Defendants make good to the ESOP the losses resulting from their serial breaches of fiduciary duty.

E.      Order that Defendants disgorge any profits that they have made through their breaches of fiduciary duty and prohibited transactions and impose a constructive trust and/or equitable lien on any funds received by Defendants therefrom.

F.      Order any other available equitable relief, or remedies, including but not limited to, the imposition of a surcharge, the restoration of the ESOP to the position they would have been but for the breaches of fiduciary duty and self-dealing; and any other kind of relief and/or damages available pursuant to ERISA §§ 409 and 502(a)(2) and (3).

G.      Order that Defendants' accounts in the ESOP be offset under ERISA § 206(d)(4) to cover the losses to the ESOP from Defendants' misconduct set forth herein.

H.      Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the ESOP.

I.      Order that Defendants pay penalties as described in ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1).

J.      Order Defendants to pay prejudgment interest; and

K.      Award such other and further relief as the Court deems equitable and just.

1

DATED: May 18, 2022                    Respectfully submitted,

2                                       Connor Dalton and Anthony Samano, as
                                        participants in and on behalf of the O.C.C.
3                                       Corporation Employee Stock Ownership
                                        Plan, and on behalf of a class of all others
4                                       who are similarly situated,

5

6                                       By: /s/ Jason H. Kim
                                             Todd M. Schneider
7                                            Jason H. Kim
                                             James A. Bloom
8                                            SCHNEIDER WALLACE
                                             COTTRELL KONECKY LLP
9                                            2000 Powell Street, Ste. 1400
                                             Emeryville, California 94608
10                                            Telephone: (415) 421-7100
                                             tschneider@schneiderwallace.com
11                                            jkim@schneiderwallace.com
                                             jbloom@schneiderwallace.com
12

13                                      *Attorneys for Plaintiffs Connor Dalton
                                        and Anthony Samano and the Proposed
14                                      Class*

15

16

17

18

19

20

21

22

23

24

25

26

27

28