UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONNOR DALTON, et al. | No. 2:22-cv-00847-DJC-DMC |
| Plaintiffs, | |
| v. | |
| FORREST C. FREEMAN, et al., | |
| Defendants. | **ORDER** |

Plaintiffs Connor Dalton and Anthony Samano, on behalf of themselves and those similarly situated, bring this action under the Employee Retirement Income Security Act ("ERISA"). Following the Court's prior grant of Defendant Alerus Financial, N.A.'s Motion to Dismiss, Plaintiffs filed a First Amended Complaint. (*See* FAC (ECF No. 67).) Defendant Alerus has filed a new Motion to Dismiss that is presently before the Court. (ECF No. 64.)

For the reasons stated below, the Court grants in part and denies in part Defendant Alerus' Motion to Dismiss.

////

////

////

1

## BACKGROUND

The Court summarized the background of this case in its prior order. (*See* ECF No. 65 at 1–3.) Relevant to Defendant Alerus Financial, N.A. specifically, Defendant Alerus was the trustee of the Employee Stock Ownership Plan ("ESOP"), which was offered by O.C. Communications ("OCC") to its employees. After OCC lost its primary source of business, OCC's assets were sold to TAK Communications CA, Inc. in 2019 for what Plaintiffs allege was less than fair market value. (FAC ¶ 12.) In 2020, the ESOP redeemed shares of OCC for substantially less than the purchase price for those shares. (*Id.*) In the FAC, Plaintiffs Connor Dalton and Anthony Samano contend that Defendant Alerus is liable for breach of the fiduciary duties it owed to Plaintiffs, approval of a transaction prohibited under ERISA, and for the breach of duties by a co-fiduciary. (FAC at 23–28.)

Defendant Alerus argues that Plaintiffs' claims against it are not viable in part because Plaintiffs have failed to plausibly allege Alerus owed Plaintiffs a fiduciary duty and because their prohibited transaction claims are time-barred. Briefing for Defendant's Motion is now complete. (Mot. (ECF No. 74-1); Opp'n (ECF No. 79); Reply (ECF No. 82).) On August 7, 2025, the Court held oral argument on this motion, after which the matter was submitted for ruling. (*See* ECF No. 83.)

## LEGAL STANDARD

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted only if the complaint lacks a "cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). While the court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party," *Steinle v. City & Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019), if the complaint's allegations do not "plausibly give rise to an entitlement to relief" the motion must be granted, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id*. at 679. However, a court may not assume that the plaintiff "can prove facts that it has not alleged . . . ." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## DISCUSSION

### I. Breach of Fiduciary Duty (Cause of Action One)

#### A. 2019 Asset Sale Transaction

As in their initial motion, Defendant Alerus again contends that Plaintiffs fail to state a claim that Defendant Alerus breached its fiduciary duties, as Plaintiffs have not plausibly alleged that Defendant Alerus had authority over the 2019 sale of OCC's assets. To state a claim for an ERISA breach of fiduciary duty under section 1132(a)(3), a plaintiff must allege that (1) the defendant was an ERISA fiduciary under the plan, (2) the defendant breached its ERISA-imposed fiduciary duty, and (3) the breach caused harm to the plaintiff. *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1026 (9th Cir. 2021).

In *Pegram v. Herdrich*, 530 U.S. 211 (2000), the Supreme Court stated that for a fiduciary duty claim, "the threshold question is . . . whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Id.* at 226. Fiduciaries may either be "named" fiduciaries, which are fiduciaries explicitly designated in the plan instrument, or "functional" fiduciaries,

3

1  which are those that "exercise[] discretionary control over management or
2  administration of a plan . . . ." *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020,
3  1026 (9th Cir. 2021).  Regardless of whether a fiduciary is named or functional, they
4  are still only subject to liability for breach of fiduciary duty under ERISA for actions
5  taken while they were performing a fiduciary function.  *See Pegram*, 530 U.S. at 226
6  (finding that whether a functional fiduciary was liable for breach of fiduciary duty
7  depended on whether the defendant was acting as a fiduciary); *see also Bafford*, 994
8  F.3d at 1026 (stating that the reasoning in *Pegram* also applied to named fiduciaries).
9      While Defendant Alerus quotes *Pegram* and *Bafford* and argues that Plaintiffs
10 "failed to identify what fiduciary duties Alerus owed to the ESOP with respect to the
11 Asset Purchase Transaction," there appears to be some confusion in the briefing
12 about how this question is correctly approached.  (Mot at 5.)  Defendant Alerus
13 focuses on the definition of a fiduciary under 29 U.S.C. § 1002(21)(A) to argue that
14 Defendant did not have authority over the 2019 Asset Sale Transaction and was thus
15 not a fiduciary for purposes of that transaction.  (*Id.* at 5–8.)  However, section
16 1002(21)(A) is utilized to define functional fiduciaries.  *See Pegram,* 530 U.S. at 225–26
17 (citing section 1002(21)(A) in discussing functional fiduciaries); *see also Bafford*, 994
18 F.3d at 2026 (citing section 1002(21)(A) in connection with functional fiduciaries but
19 not named fiduciaries).  As noted in the Court's prior order, Defendant Alerus was a
20 named fiduciary in the ESOP Plan Document.  (*See* ECF No. 65 at 4.)  Thus, section
21 1002(21)(A) is only helpful insofar as it clarifies that an exercise of discretion is a
22 fiduciary action.  *See* 29 U.S.C. § 1002(21)(A)(iii); *see also Bafford*, 994 F.3d at 1028
23 ("[D]iscretion is one of the central touchstones for a fiduciary role." (emphasis
24 omitted)).
25     Regardless of whether Defendant Alerus was a named fiduciary or a functional
26 fiduciary, the core question is whether Defendant was engaged in a "fiduciary
27 capacity" in connection with the 2019 Asset Sale Transaction or, stated alternatively,
28 the wrong occurred "in connection with the performance of a fiduciary function."

4

*Bafford*, 994 F.3d at 1028.  Plaintiffs have not identified any fiduciary function that Defendant Alerus even had in connection with the 2019 Asset Sale Transaction itself.  As such, a breach of fiduciary duty claim on this basis is not viable under the allegations in the FAC.

However, Plaintiffs have also alleged that Defendant Alerus breached its fiduciary duty when it failed to bring a derivative shareholder suit.  Several courts have held that the duties of loyalty and prudence imposed on ERISA fiduciaries under section 1104 "include the duty to take reasonable steps to realize on claims held in trust." *Harris v. Koenig*, 602 F. Supp. 2d 39, 54 (D.D.C. 2009) (internal citations and quotations omitted); *see Hurtado v. Rainbow Disposal Co.*, No. 8:17-cv-01605-JLS-DFM, 2018 WL 3372752, at *11 (C.D. Cal. July 9, 2018).  This includes an obligation for "trustees . . . to investigate the relevant facts, to explore alternative courses of action and, if in the best interests of the plan participants, to bring suit . . . ." *Id.* (citing *McMahon v. McDowell*, 794 F.2d 100, 112 (3d Cir. 1986)).  Defendant Alerus seeks to distinguish *Hurtado* by pointing out that the Trust Agreement in that case specifically provided that the trustee had an obligation to bring lawsuits.  (Reply at 3.)  But the existence of this provision was not considered by the court in *Hurtado* in making its ruling.  Instead, the court focused exclusively on the duties imposed by section 1104. *Hurtado*, 2018 WL 3372752, at *11.

The reasoning in these cases applies equally here.  Plaintiffs have alleged that Defendant Alerus, as a trustee fiduciary, had an obligation to "undertake all appropriate actions to protect the ESOP" including bringing a shareholder lawsuit based on the 2019 Asset Sale Transaction.  (FAC ¶ 197.)  Defendant Alerus accurately notes that courts of appeal from other circuits have held that to succeed on such a basis, plaintiffs must show that "prove a lawsuit would be successful and advantage the beneficiaries of the plan." *Herman v. Mercantile Bank, N.A.*, 137 F.3d 584, 587 (8th Cir. 1998).  While Defendant Alerus has not cited any case from this Circuit that requires such a showing, even if this is a requirement for a successful claim based on

Defendant Alerus' failure to sue, the allegations in the FAC, taken as true, are sufficient to state a claim at this stage. (*See, e.g.*, FAC ¶ 193 (alleging Fiduciary Defendants failed to fulfill their fiduciary duties to the ESOP by knowingly approving the sale of OCC's assets for less than fair market value).) Accordingly, Defendant Alerus's Motion to Dismiss as to Plaintiffs' First Cause of Action is denied as to the 2019 Asset Sale Transaction.[1]

**B. 2020 Redemption Transaction and Forfeiture of Unallocated Shares**

In the FAC, Plaintiffs have now also alleged that Defendant Alerus breached its fiduciary duties in connection with the 2020 Redemption Transaction. The FAC is vague about the scope of these allegations, but the allegations fall into two categories. First, Plaintiffs allege that Defendant Alerus breached its fiduciary duty when it failed to get "fair market value" from the redemption of allocated shares. (FAC ¶ 213.) Second, Plaintiffs allege that Defendant breached its fiduciary duty in agreeing to an exchange of unallocated shares for forgiveness of promissory notes because the value of the notes was "grossly disproportionate to the value the ESOP received in exchange." (*Id.*) Defendants move to dismiss claims on this basis, arguing that the FAC lacks allegations that establish that the redemption transaction and forfeiture of unallocated shares constituted a breach of Defendant Alerus' fiduciary duties. (Mot. at 9.)

On the former claim, based on the failure to acquire fair market value for the shares, Plaintiffs have sufficiently alleged facts that establish a viable claim at this stage. Defendant Alerus agrees that it was "engaged to review and analyze the Redemption Transaction pursuant to the Independent Trustee Engagement Agreement[.]" (*Id.*) The FAC presents two theories for why the redemption was for less than "fair market value." Plaintiffs first suggest that the sale price was not for fair

---

[1] By this order, Plaintiffs' claims against Defendant Alerus related to the 2019 Asset Sale Transaction are limited to those based on a theory that Defendant Alerus did not satisfy its duties of loyalty and prudence based on the failure to pursue legal remedies in connection with the 2019 Asset Sale.

market value because it was less than the original 2011 share value and because it was less than the value of the asset sold by OCC.  The FAC does not support a breach of fiduciary duty based solely on the difference in share value between 2011 and 2019.  That fluctuation in price is attributable to numerous potential factors, perhaps most obviously the cancellation of the Comcast contract.  And Plaintiffs' assertion that the 2011 price did not appropriately account for the risk of such a cancellation is entirely conclusory.

The second theory for why the 2020 Redemption Transaction was for less than fair market value is that OCC's assets were sold for $7,200,000.00, and that this would have represented a value of $0.62 per share, but that when OCC redeemed the ESOP's allocated shares, it was only for a value of $0.32 per share.  (FAC ¶¶ 134–36.)  While there is a temporal gap between the 2019 Asset Sale Transaction and the 2020 Redemption Transaction, the amount of that gap is relatively short, and there is no immediate explanation for the substantial difference in value from the asset sale to the redemption given that OCC had allegedly already sold its assets, making the claim plausible at this stage.

Defendant Alerus cites cases that note that in asserting such a claim, Plaintiffs must allege facts from which the Court may reasonably infer that the fiduciary's decision-making process was flawed.  Defendant Alerus is correct that the factual allegations in the FAC lack much of the traditional detail on which courts rely in connection with similar allegations.  However, this case is distinguishable from others where Plaintiffs rely on a difference in share value.  Unlike those cases, after all of OCC's assets were sold there was no clear justification for a substantial fluctuation in the value obtained from those assets.[2]  While this alone would certainly not be enough to survive summary judgment, taken as true, Plaintiffs' allegations are sufficient at this

---

[2] There is some argument in the briefing that the settlement of wage and hour claims was at least partially responsible for this difference in value.  While this could form the basis for a meritorious defense at summary judgment, the Court cannot consider the truth of Defendant's claims at this stage of the proceedings.

stage for the Court to reasonably infer that the fiduciary's decision-making process was flawed. *See Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1070 (N.D. Cal. 2017). Defendant's Motion is thus denied as to this portion of Plaintiffs' fiduciary duty claim against Defendant Alerus.

As to the second portion of this claim, the forfeiture of unallocated shares, Plaintiffs have not plausibly alleged a breach. Plaintiffs' allegation here seems to be that the ESOP overpaid for two promissory notes in 2011. (Opp'n at 12 ("During those negotiations, Alerus should have, but did not, seek to undo the damage Alerus had done by approving the ESOP's overpayment for OCC shares in 2011.").) The FAC does not identify any basis to believe that the forfeiture in exchange for forgiveness of the 2011 notes constituted a breach of Alerus's fiduciary duties. Instead, the FAC spends substantial time discussing the promissory notes themselves and their value. (FAC ¶¶ 41–72.) Plaintiffs' Opposition further highlights that Plaintiffs' contention here is more related to the valuation of the 2011 purchase than anything about the forfeiture of the unallocated shares. (Opp'n at 12–13.) Plaintiffs cannot use the 2020 forfeiture as a window to contest the original value of the shares when they were purchased in 2011. The allegations in the FAC are insufficient to establish that the forfeiture of the unallocated shares in exchange for the forgiveness of the promissory notes was in any way a breach of Defendant Alerus' fiduciary duties. Accordingly, Defendant's Motion to Dismiss is granted on this basis.

### C. Distribution of Plan Assets and Administrative Fees

Finally, Plaintiffs have failed to allege that Defendant Alerus acted in connection with a fiduciary function in connection with the timely disposition of assets. *See Bafford*, 994 F.3d at 1028. In their Opposition, Plaintiffs point to a portion of the 2020 "Independent Trustee Engagement Agreement" that mentions the disposition of assets. (Opp'n at 14–15.) But that section explicitly concerns "reviewing, analyzing, and making a determination as to whether the ESOP should approve, consent to, and/or otherwise engage in certain proposed transactions" including the termination

of the ESOP and distribution of its assets. (*Id.*) It does not, as Plaintiffs suggest, grant Defendant Alerus authority or responsibility for terminating the ESOP or distributing its assets. Plaintiffs have thus failed to identify what fiduciary function Defendant Alerus was engaged in that would create breach of fiduciary duty liability for the distribution of the termination of the ESOP and distribution of its assets. Defendant's Motion is granted as to this portion of Plaintiffs' First Cause of Action.

**II. Timeliness of Plaintiffs' Prohibited Transaction Claim (Cause of Action Two)**

In the FAC, Plaintiffs add an additional cause of action against Defendant Alerus specifically, alleging that Defendant engaged in transactions prohibited by ERISA. (FAC at 25-27.) Defendant contends these claims are untimely as they are subject to a three-year statute of limitations, occurred in 2020, and were not included in the initial complaint filed by Plaintiffs. (Mot. at 13-17.) Plaintiffs do not contest that the three-year statute of limitations has run and instead contend that these claims are timely as the FAC relates back to the initial complaint that was filed within the three-year limitations period. (Opp'n at 16.)

Federal Rule of Civil Procedure 15(c)(1)(B) provides that a pleading relates back to the date of an original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" "Claims arise out of the same conduct, transaction, or occurrence if they share a common core of operative facts such that the plaintiff will rely on the same evidence to prove each claim." *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008) (internal citations and quotations omitted). The prohibited transaction cause of action in the FAC addresses (1) the 2020 Redemption Transaction in which OCC redeemed shares from the ESOP and (2) the forfeiture of unallocated shares in exchange for forgiveness of the promissory notes. (FAC ¶¶ 208-09.) The question then is whether these claims share a common core of operative facts with the claims in the original complaint.

Plaintiffs' initial complaint, filed in 2022, was not a model of clarity regarding

the scope and focus of Plaintiffs' claims.  Plaintiffs originally asserted breach of fiduciary duty and breach of co-fiduciary duty claims against Defendant Alerus, and the recitation of the specific bases for these causes of action is focused on the 2019 Asset Sale Transaction.  (*See* ECF No. 1 ¶¶ 151–66.)  No mention is made of the 2020 Redemption Transaction or the forfeiture of unallocated shares; Plaintiffs appear exclusively concerned with the events that occurred with the sale of OCC's assets to TAK.  However, elsewhere in the complaint, which Plaintiffs incorporates into their claims (*id.* ¶¶ 160, 167), Plaintiffs not only discuss OCC's 2020 share redemption but specifically allege that the redemption was not for fair market value (*id.* ¶ 12–13) and claim that there were common questions of fact and law across the purported class as to "whether OCC's redemption of the ESOP's shares occurred at the fair market value of those shares or in a manner otherwise fair to the ESOP" (*Id.* ¶ 148).

While the complaint is less than clear about the scope of Plaintiffs' claims, it appears that Plaintiffs were at least <u>attempting</u> to assert claims based on the valuation of shares in the 2020 Redemption Transaction.  This appears to minimally satisfy the requirement for relation back under Rule 15(c)(1)(B), which specifically contemplates where an original complaint ineffectively attempts to assert certain claims.  Courts are also more lenient in applying the rules on relation back where new causes of action are asserted against an existing defendant.  *See McKee v. Peoria Unified Sch. Dist.*, 963 F. Supp. 2d 911, 923 (D. Ariz. 2013).  On this basis, the Court finds that Plaintiffs' Second Cause of Action relates back to Plaintiffs' prior, timely complaint.  Thus, these claims are not untimely.  Defendant Alerus' Motion to Dismiss this claim is denied.

**III. Breach of Co-Fiduciary Duty (Cause of Action Three)**

Defendant Alerus first argues that Plaintiffs' breach of co-fiduciary duty claim should be dismissed in its entirety on the same basis they argued as to the first cause of action.  Defendant argues that the imposition of liability on co-fiduciaries under 29 U.S.C. § 1105(a) only applies where the defendant is themselves a fiduciary, effectively applying the reasoning of *Bafford* and *Pegram* to co-fiduciary duty claims.  As

Defendant notes, courts in other circuits have adopted this view. *See Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A)*, 768 F.3d 284, 295 n.5 (3d Cir. 2014). Plaintiffs do not cite any contrary authority, and the Court finds these arguments persuasive. However, as discussed above, the Court concludes the FAC sufficiently alleges Defendant Alerus had fiduciary duties in connection with the 2019 Asset Sale Transaction and the 2020 Redemption Transaction. Thus, Plaintiffs' breach of co-fiduciary duty claims cannot be dismissed on this basis. Defendant's Motion is granted as to any other co-fiduciary duty claims.

The Court notes that the FAC states that Plaintiffs bring their Third Cause of Action for breach of co-fiduciary duty claims under subsections (1), (2), and (3) of 29 U.S.C. § 1105(a). Not addressed by any of the briefing is the fact that each of these subsections represents a separate cause of action with different standards. *See Acosta*, 355 F. Supp. 3d at 923–24 (stating that "[a] different standard applies to each subsection" of section 1105 and identifying those standards); *see also Ramirez v. AMPAM Parks Mech., Inc.*, No. 24-cv-1038-KK-DTBx, 2025 WL 621546, at *6 (C.D. Cal. Feb 14, 2025). The standards for these subsections are meaningfully different. However, at oral argument, Plaintiffs' counsel clarified that they intended to bring their claim under section 1105(a)(3).

Defendant Alerus also argues that Plaintiffs' co-fiduciary duty claim is entirely conclusory, arguing that it is largely the same as Plaintiffs' prior complaint and fails to cure the deficiencies that led to the Court dismissing the prior complaint. (Mot. at 18–19.) To state a claim under section 1105(a)(3), a plaintiff must plausibly allege "(1) that the fiduciary had knowledge of the co-fiduciary's breach, and (2) that the fiduciary failed to make reasonable efforts under the circumstances to remedy the breach." *Acosta*, 355 F. Supp. 3d at 294 (quoting *Carr v. Int'l Game Tech.*, 770 F. Supp. 2d 1080, 1090 (D. Nev. 2011)). While the allegations in the claim section of the FAC are minimal, Defendant's argument ignores the substantial addition of factual allegations to the FAC more broadly. The substance of Plaintiff's claims is generally clear, at least

in regard to the 2019 and 2020 transactions for which Defendant Alerus allegedly had at least some fiduciary role.  Looking at the 2019 Asset Sale Transaction, Plaintiffs' claim is that Defendant Alerus knew that OCC, run by various fiduciaries, failed to obtain adequate value from the sale of OCC's assets to TAK (satisfying the first element) and that Defendant Alerus failed to make reasonable efforts to remedy the breach by pursuing legal remedies (satisfying the second element).  For the 2020 Redemption Transaction, Plaintiffs' claim is that Defendant Alerus knew that the ESOP improperly accepted less than fair value for redemption of the allocated shares (satisfying the first element) and that Defendant Alerus's failure to decline approval of that transaction amounted to a breach of fiduciary duties (satisfying the second element).

It is common for the factual allegations underlying a co-fiduciary duty claim against a defendant to overlap with the factual allegations that form a fiduciary duty claim against the same defendant.  In large part, the distinction is whether the fiduciary or the co-fiduciary was responsible for the initial breach and the knowledge of the defendant in co-fiduciary claims.  Thus, it is reasonable for these claims to be alleged in the alternative.  Plaintiffs' failure to specifically reiterate allegations about the underlying breach when stating a co-fiduciary claim, while perhaps ineffective and unclear, is not fatal to that claim.  At this stage, the factual allegations in the FAC are sufficient to support Plaintiffs' breach of co-fiduciary duty claim against Defendant Alerus.

## CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Defendant Alerus' Motion to Dismiss (ECF No. 74) is GRANTED IN PART and DENIED IN PART as follows:
    a. Defendant's Motion is DENIED as to Plaintiffs' Breach of Fiduciary Duty claim and Breach of Co-Fiduciary Duty claim against Defendant Alerus concerning Defendant's alleged failure to

          pursue legal remedies in connection with the 2019 Asset Sale Transaction and in connection with the failure to obtain fair market value for the shares based on the value of the assets sold in the 2020 Redemption Transaction.

      b. Defendant's Motion is GRANTED as to all other allegations against Defendant Alerus for breach of fiduciary duty. Leave to amend is not granted as to these allegations as, at this stage, it appears likely that further amendment would be futile.

      c. Defendant's Motion is DENIED as to the timeliness of Plaintiffs' Prohibited Transaction cause of action.

2. Plaintiffs' Breach of Fiduciary Duty and Breach of Co-Fiduciary Duty claims against Defendant Alerus not related to the alleged failure to pursue legal remedies in connection with the 2019 Asset Sale Transaction and to obtain fair market value for the shares based on the value of the assets sold in the 2020 Redemption Transaction are dismissed without further leave to amend.

3. Defendant Alerus shall file a responsive pleading within fourteen (14) days after service of this order.

IT IS SO ORDERED.

Dated: **September 9, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC1 - dalton22cv00847.mtd2

13