Todd M. Schneider (SBN 158253)
James A. Bloom (SBN 31105)
**SCHNEIDER WALLACE**
**COTTRELL KIM LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
tschneider@schneiderwallace.com
jbloom@schneiderwallace.com

*Attorneys for Plaintiffs Connor Dalton and*
*Anthony Samano and the Proposed Class*

### THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONNOR DALTON and ANTHONY SAMANO, as participants in and on behalf of the O.C. Communications Employee Partnership Program Plan and Trust, and on behalf of a class of all others who are similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>FORREST C. FREEMAN (aka CRAIG FREEMAN); ALERUS FINANCIAL, N.A.; CARLA FREEMAN; LARRY L. WRAY; REGINAL D. WIGHT; RICK WYLIE; DON YEE; and O.C. COMMUNICATIONS, INC.,<br><br>    Defendants. | Case No. 2:22-cv-00847-DJC-DMC<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO DEFENDANT ALERUS FINANCIAL, N.A.'S MOTION FOR ORDER DIRECTING FED. R. CIV. P. 7 REPLY TO ALERUS FINANCIAL, N.A.'S ANSWER (Dkt. No. 94)** |

Plaintiffs, Connor Dalton and Anthony Samano, as participants in and on behalf of the O.C. Communications Employee Partnership Program Plan and Trust (the "OCC ESOP"), and on behalf of a class of all others who are similarly situated (together, "Plaintiffs"), hereby respectfully submit this response in opposition the Motion for Order Directing Fed. R. Civ. P. 7 Reply to Alerus Financial, N.A.'s Answer (the "Motion," Dkt. 94), filed by Defendant Alerus Financial, N.A. ("Alerus").

## INTRODUCTION & PROCEDURAL HISTORY

Plaintiffs filed their first amended complaint (the "FAC") on April 15, 2025. (Dkt. 67). Count II of the FAC included a prohibited transaction claim against Alerus under ERISA § 406(a), *codified at* 29 U.S.C. § 1106(a). The other defendants answered the FAC, but Alerus moved to dismiss. (Dkt. 74). Alerus's motion to dismiss did not challenge the substance of Plaintiffs' prohibited transaction claim. Instead Alerus argued that the prohibited transaction claim was time-barred. The Court denied Alerus's motion to dismiss as to the prohibited transaction claim, ruling that the claim was timely. (Dkt. 84, at 9-10, 13).

In its Motion and the accompanying memorandum (Dkt. 94-1, the "Memo"), Alerus now demands that Plaintiffs reply to Alerus's Answer (Dkt. 88). Alerus essentially argues that its Answer contains sufficient factual material that, accepted as true, makes it likely that Alerus will prevail on its affirmative defense to Plaintiffs' prohibited transaction claim, and argues that its Answer warrants requiring Plaintiffs to file a reply.

As set out in more detail below, however, Alerus's Answer shows exactly the opposite. Alerus was the trustee of the OCC ESOP, a retirement savings vehicle whose only assets were shares of OCC. As a trustee, Alerus was bound by ERISA's duties of prudence and loyalty, duties which are the "highest known to the law." *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996). In its Answer, Alerus effectively admits that it was almost totally unfamiliar with OCC's business, and in many cases Alerus denies having knowledge of facts set out in the very documents Alerus claims to have relied on in approving the OCC ESOP transaction—the very documents Alerus attached to its Answer and which, Alerus contends, require Plaintiffs to reply to its Answer.

# ARGUMENT

ERISA § 406(a), *codified at* 29 U.S.C. § 1106(a), "supplements the [ERISA] fiduciary's general duty of loyalty to the plan's beneficiaries . . . by categorically barring certain transactions deemed likely to injure the pension plan." *Cunningham v. Cornell Univ.*, 604 U.S. 693, 697 (2025) (citations omitted) ("*Cornell*"). In turn, ERISA § 408, *codified at* 29 U.S.C. § 1108, then "separately enumerates 21 exemptions to those prohibited transactions." *Id.*

In *Cornell*, the Supreme Court explained that the exemptions in § 1108 "do not impose additional pleading requirements to make out" a prohibited transaction claim, and are instead affirmative defenses for which defendants bear the burden of proof. *Id.* at 700-701. The Court took seriously the arguments in *Cornell* that this statutory structure could lead to "an avalanche of meritless litigation," but held that Congress "set the balance in creating an exemption and writing it in the orthodox format of an affirmative defense...." *Id.* at 707-708 (cleaned up). To allay those concerns, the Court in *Cornell* explained that:

> [I]f a fiduciary believes an exemption applies to bar a plaintiff's suit and ***files an answer showing as much***, Federal Rule of Civil Procedure 7 empowers district courts to 'insist that the plaintiff' file a reply 'put[ting] forward specific, nonconclusory factual allegations' showing the exemption does not apply.

*Id.* at 708 (emphasis added, citations omitted).

Alerus concedes that the FAC states a claim for a prohibited transaction regarding Alerus's approval of the ESOP Buyout transaction and OCC's redemption of ESOP shares. Memo. at 3-4. Alerus contends, however, that its Answer shows that Alerus satisfies the ERISA § 408(e), 29 U.S.C. § 1108(e) affirmative defense that "adequate consideration" was paid for the ESOP's shares. Mem. at 4-5.

Even accepting, *arguendo*, Alerus's premise that a Court must or should somehow limit its evaluation of a fiduciary's conduct simply to reviewing the formalisms of a fiduciary's process without examining the merits of the transaction,[1] that is, reducing the analysis to a box-checking

---

[1] Alerus contends that a Court's inquiry into whether the adequate consideration defense is met is purely procedural, and selectively cites *Howard v. Shay* for the proposition that the inquiry "focuses on the thoroughness of the fiduciary's process." However, in *Howard v. Shay* the Ninth Circuit explained that "the court focuses **not only on the merits of the transaction**, but ***also*** on the

exercise whereby Alerus's rubber stamping goes unquestioned, Alerus's Answer falls far short of demonstrating that Alerus will be able to make out a defense under 1108(e)'s adequate consideration defense.

In its Answer, Alerus admits to having essentially no knowledge about OCC's business, the administration of the OCC ESOP, and the numerous self-dealing real estate transactions that OCC engaged in with ESOP fiduciary and CEO Mr. Freeman. *See* Answer ¶¶ 1, 2, 3, 7, 9, 11, 17, 22-37, 39, 40, 49, 57, 60, 66, 68-72, 73-89, 92-100, 102-107, 110, 115, 118, 120-124, 127, 134, 142-147, 149, 152-155, 159-160, 162. In total, in its Answer, Alerus admitted that it lacked sufficient knowledge to admit or deny at least 90 factual allegations in the FAC. *Id.*

Alerus served as the OCC ESOP's discretionary trustee throughout the existence of the ESOP, and was specially retained as a discretionary responsibility on behalf of the ESOP to determine whether to engage in the ESOP Buyout transaction. Yet Alerus lacks basic knowledge of many aspects of OCC's business and the background of the transaction. In particular, Alerus lacks knowledge as to:

- Basic facts about OCC's business and corporate history, Answer ¶¶ 2, 28, 30, 32-37, 68, 110, 118;
- Basic facts about OCC's asset sale, which set the stage for the ESOP Buyout at issue, Answer ¶¶ 9, 102-103, 115, 118, 120, 121-124;
- The identities of the other fiduciaries of the OCC ESOP, Answer ¶¶ 27, 28, 39-40;
- Basic facts about the administration of the OCC ESOP, Answer ¶¶ 22, 25-26; and
- The self-dealing real-estate transactions OCC engaged in with Mr. Freeman, one of Alerus's co-fiduciaries of the OCC ESOP, Answer ¶¶ 73-91.

More troublingly, Alerus also lacked basic information about OCC ESOP matters for which Alerus itself served as the ESOP's trustee, such as:

- the transaction involving promissory notes given by the ESOP in exchange for its

---

thoroughness of the investigation into the merits of the transaction." *Howard*, 100 F.3d at 1488 (emphasis added). Thus, read in full, the Ninth Circuit suggested that the merits of the transaction are also important—which makes sense, since the merits of the transaction are essential to understanding the thoroughness of a fiduciary's process.

- shares of OCC, Answer ¶¶ 60, 66, 70-72, 127; and
- The appraisal of the ESOP's shares of OCC, Answer ¶¶ 69, 104-107, 134.

Alerus's admitted lack of knowledge about these issues is fatal to Alerus's Motion. Alerus's had a duty to know these facts, and no prudent process could have been undertaken by a trustee so ill-informed. The ESOP Buyout prohibited transaction at issue involved the very same ESOP notes that Alerus admits it lacks sufficient information to understand, and the most obvious evidence the transaction was highly unfair was the devastating effect it had on the ESOP's participants, reflected in the per share price they received. Yet Alerus admits it lacks sufficient knowledge of the history of OCC's share price to admit or deny the plain allegations in the FAC regarding either the history of the notes or the ESOP's share price. Answer ¶¶ 60, 66, 70-72, 127; 69, 104-107, 134.

Moreover, Alerus's was expressly responsible as the Trustee for the posting principal and interest payments by the ESOP for the ESOP notes, (Dkt. 41-2, at 9 of 9, ¶ 2(b)), reviewing and approving the ESOP's annual appraisals (*id.* at ¶ 2(f)), and meeting periodically with OCC and the ESOP committee (*id.* at ¶ 2(l)), a responsibility Alerus could not have been fulfilling given Alerus's unfamiliarity with OCC's leadership or the makeup of the ESOP committee. Answer ¶¶ 27, 28, 39-40; 30, 32-37, 68, 110, 118.

Alerus defends the thoroughness of its investigation by arguing that it hired and relief on advisors in approving the ESOP Buyout. Memo at 4-6. In particular, Alerus points to its retention of Chartwell financial to provide a fairness opinion and valuation of the OCC ESOP's stock. However, Alerus's admitted lack of information in its Answer includes facts drawn from or repeated in the very documents Alerus attached to its Answer. *Compare* Answer ¶¶ 33-34 ("At all relevant times, OCC's business revenue has come almost exclusively for providing residential installation contractor services for Comcast."), *with* Alerus's Answer Ex. 5, at Alerus_0000023 (first paragraph); and Answer ¶¶ 69-71 (detailing the timeline and balances of the ESOP notes), *with* Alerus's Answer Ex. 5, at Alerus_0000023 (also reflecting certain of the same facts about the balances of the ESOP notes and unallocated ESOP shares). Alerus also admits that it has insufficient knowledge or information to work out the implied per share sale price of OCC's assets to TAK, Answer ¶ 134, even though all

of the relevant data was included in Alerus's report from Chartwell, Alerus's Answer Ex. 5, at Alerus_0000023, and working out the price would have been a trivial mathematical exercise which any prudent fiduciary would have undertaken. Alerus therefore admits that it lacks knowledge and information of nearly all of the salient facts regarding the ESOP Buyout. If anything, Alerus's Answer shows that Alerus made no effort to actually understand the nature of the ESOP Buyout, let alone the reasons or against undertaking that transaction.

In *Howard*, the Ninth Circuit explained that a fiduciary's reliance on an advisor is not a "whitewash," and that, among other things, a fiduciary must "make certain that reliance on the expert's advice is reasonably justified under the circumstances." 100 F.3d at 1489. Here, there is no evidence that Alerus could have ensured that reliance on Chartwell's valuation given Alerus's unfamiliarity with the pertinent background information about OCC, the ESOP, or the transaction, including fundamentally important factual material included in Chartwell's valuation.

## CONCLUSION

For the foregoing reasons, the Court should deny Alerus's Motion.

Dated: December 1, 2025                     Respectfully submitted,

By: /s/ *James A. Bloom*
Todd M. Schneider
James A. Bloom
**SCHNEIDER WALLACE COTTRELL KIM LLP**
2000 Powell Street, Ste. 1400
Emeryville, California 94608
Telephone: (415) 421-7100
tschneider@schneiderwallace.com
jbloom@schneiderwallace.com

*Attorneys for Plaintiffs Connor Dalton and Anthony Samano and the Proposed Class*

## CERTIFICATE OF SERVICE

I, James A. Bloom, hereby certify that I caused the foregoing to be filed using the Court's electronic CM/ECF filing system. All parties are represented by counsel of record who are registered with the CM/ECF system who will receive copies electronically through that system.

Dated: December 1, 2025                    Respectfully submitted,

                                By: /s/ *James A. Bloom*
                                James A. Bloom